Jose B. VASQUEZ, Plaintiff,

v.

ATRIUM DOOR AND WINDOW
COMPANY OF ARIZONA,
INC., Defendant.

No. CIV 00–1265–PHX–LOA.

United States District Court,
D. Arizona.

Aug. 19, 2002.

Stephen G. Montoyo, Phoenix, AZ, for
plaintiff.

Bradley D. Gardner, Udall, Shumway, Blackhurst, Allen & Lyons, PC, for defendant.

## ORDER

ANDERSON, United States Magistrate Judge.

This matter arises on Plaintiff's Motion Regarding Whether Constructive Discharge Constitutes a Tangible Employment Action. (document # 80). Plaintiff requests that the Court issue an order that a constructive discharge resulting from the discriminatory conduct of a supervisor constitutes a "tangible employment action" and, consequently, bars the affirmative defenses established by the Supreme Court in *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The Court has received and considered all the pleadings on the matter including Defendant's Response to Plaintiff's Notice of Supplemental Authority.

## *SUMMARY OF FACTUAL BACKGROUND*

In the Complaint,[1] Plaintiff claims that Defendant, his former employer, engaged in racial and national origin discrimination which created a racially hostile work environment and led to Plaintiff's constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), and the Civil Rights Act of 1991, 42 U.S.C. § 1981. Defendant denies any wrongdoing and asserts that Plaintiff voluntarily resigned for reasons unrelated to his claims of discrimination. Plaintiff, a native of Mexico living lawfully in the United States as a permanent resident alien, claims that his former supervisor and plant manager, Don Dezonia, a Caucasian, frequently called Plaintiff and other Hispanic employees "wet backs," "spics," "beaners," or "braceros" in the workplace from August 1998 to July 1999. Plaintiff attests that he asked Dezonia many times not to use the offensive language. Dezonia, however, allegedly continued to use the racial slurs. Plaintiff asserts that he then complained to Defendant's General Manager, Fred Bengston, after threatening to quit because of the racial slurs. According to Plaintiff, Bengston's only action was telling Plaintiff and Dezonia that they needed to work together. Plaintiff testified that two weeks later, the racial slurs began again. Plaintiff claims that on July 29, 1999, upon the realization that the name-calling would not stop, Plaintiff resigned from his job.

On April 29, 2002, the Court denied Defendant's Motion For Summary Judgement (doc. # 62), indicating, among others, that questions of fact existed for jury resolution on Plaintiff's claims of hostile work environment and constructive discharge.

Both parties request a pretrial ruling that the Court determine now, a few weeks before trial, whether a constructive discharge constitutes a tangible employment action. In agreeing to do so, the Court limits its holding to situations in which a supervisor has harassed a subordinate and does not reach the issue of whether the Court's holding herein extends the availability of the *Ellerth/Faragher* affirmative defense when the constructive discharge is caused by a non-supervisor.

---

1. The parties have consented to magistrate judge authority pursuant to 28 U.S.C. § 636(c).

## ELLERTH/FARAGHER AFFIRMATIVE DEFENSES

The Supreme Court, in *Ellerth* and *Faragher*, determined that "an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. The Supreme Court further stated that an employer may raise an affirmative defense to liability or damages "when no tangible employment action is taken." *Id.* Therefore, no affirmative defense is available to an employer "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.*

## TANGIBLE EMPLOYMENT ACTION

A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257. The Supreme Court elaborated by stating the following:

> A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authori-

ty of the company, can cause this sort of injury ... Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control.

*Ellerth*, 524 U.S. at 762, 118 S.Ct. 2257.

## CONSTRUCTIVE DISCHARGE

The Ninth Circuit has held that a "constructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Satterwhite v. Smith*, 744 F.2d 1380, 1381(9th Cir.1984); *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir.1982).

The issue before the Court appears to be an issue of first impression in, at least, the District of Arizona. The Ninth Circuit has yet to consider whether constructive discharge constitutes a tangible employment action. *Kohler v. Inter–Tel Technologies*, 244 F.3d 1167, 1179 n. 8 (9th Cir.2001)(stating that the Ninth Circuit has yet to determine if constructive discharge is a tangible employment action); *Montero v. Agco Corp.*, 192 F.3d 856, 861 (9th Cir.1999)(declining to reach the issue). Other Courts, including the First, Third,[2] Fourth, Fifth, Sixth,[3] and Tenth[4] Circuits, have also not yet directly addressed the

---

**2.** *Cardenas v. Massey*, 269 F.3d 251, 267 n. 10 (3rd Cir.2001)(stating that though the Court assumed constructive discharge was a tangible employment action for purposes of discussion of the case, the Court left the issue for the District Court in the first instance.)

**3.** Plaintiff cited *Policastro v. Northwest Airlines*, 297 F.3d 535 (6th Cir.2002) in Plaintiff's Notice of Supplemental Authority.

However, there was no finding of constructive discharge in *Policastro*, so the explanation by the court is likely unreliable dicta. Furthermore, there are no other published opinions that address this issue by the Sixth Circuit.

**4.** Plaintiff cited *Mallinson–Montague v. Pocrnick*, 224 F.3d 1224 (10th Cir.2000) in the instant motion. However, the jury in *Mallin-*

issue. The remaining circuits, however, are split on the issue.

### REVIEW OF OTHER CIRCUITS

The majority view is held by the Seventh, Eighth, and Eleventh Circuits, which have determined that a constructive discharge constitutes a tangible employment action. The Seventh Circuit has determined that "[c]onstructive discharge, like actual discharge, is a materially adverse employment action." *EEOC v. University of Chicago Hospitals,* 276 F.3d 326, 331 (7th Cir.2002). Similarly, the Eighth Circuit has found that "constructive discharge constitutes a tangible employment action which prevents an employer from utilizing the affirmative defense." *Jaros v. LodgeNet Entertainment Corp.,* 294 F.3d 960, 966 (8th Cir.2002); *Jackson v. Arkansas,* 272 F.3d 1020, 1026 (8th Cir.2001)(stating that "if [the plaintiff] were constructively discharged, then the constructive discharge would constitute a tangible employment action and prevent [the employer] from utilizing the affirmative defense."). Finally, the Eleventh Circuit has concluded that "[c]onstructive discharge qualifies as an adverse employment action." *Poole v. The Country Club of Columbus, Inc.,* 129 F.3d 551, 554 (11th Cir.1997).

The minority view is held by the Second Circuit. The Second Circuit has held that constructive discharge is not a tangible employment action. *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2nd Cir.1999)(stating that constructive discharge does not constitute a tangible employment action). In *Caridad,* Court stated that "when a supervisor makes a tangible employment decision, there is as-surance the injury could not have been inflicted absent the agency relationship." *Id. Caridad,* however, is factually distinct from the instant case. In *Caridad,* the employee never complained that she was being sexually harassed. In the instant case, Plaintiff complained to Defendant's General Manager, Fred Bengston, after threatening to quit because of the harassment. Plaintiff further attests that Bengston did nothing to resolve the situation, and the harassment subsequently continued. Bengston's failure to act and his apparent acquiescence allow a reasonable juror to conclude that Atrium, the corporate employer, consented to the actions of the supervisor.

### ANALYSIS

■ After careful consideration of the issue, the Court finds that a constructive discharge constitutes a tangible employment action. The Court has given considerable weight to the following factors: (1) the Ellerth/Faragher list of tangible employment actions was not intended to be exhaustive; (2) the majority's view that a constructive discharge is a tangible employment action is more consistent with the remedial purposes of Title VII; and (3) the economic damage to the employee is the same regardless of whether he or she is unlawfully fired or constructively discharged.

First, the Supreme Court's list of tangible employment actions in *Ellerth* was likely not intended to be either exhaustive or exclusive of a constructive discharge. *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257 (stating that "no affirmative defense is available ... when the supervisor's harassment

---

*son–Montague* did not find the employee was constructively discharged. Therefore, the language used by the court is likely unreliable

dicta. There are no other published opinions that address this issue by the Tenth Circuit.

culminates in a tangible employment action, *such as* discharge, demotion, or undesirable reassignment.")(emphasis added); *Faragher*, 524 U.S. at 808, 118 S.Ct. 2275. Therefore, the exclusion of constructive discharge from the list of examples does not exclude the possibility that constructive discharge may be a tangible employment action.

Second, the Court's holding herein is consistent with the remedial purposes of Title VII. *Washington County v. Gunther*, 452 U.S. 161, 178, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)(stating that "a 'broad approach' to the definition of equal employment opportunity is essential to overcoming and undoing the effect of discrimination ... We must therefore avoid interpretations of Title VII that deprive victims of discrimination of a remedy"). Precluding an interpretation that constructive discharge was not a tangible employment action would be contrary to this purpose. Such a holding would not protect an employee from the unlawful behavior of a supervisor who creates "intolerable and discriminatory working condition[s]" and would likely insulate the employer from liability if the victimized employee were forced to quit.

Third, as the Supreme Court noted, "a tangible employment action in most cases inflicts direct economic harm." *Ellerth*, 524 U.S. at 762, 118 S.Ct. 2257. No doubt, so does a constructive discharge. The economic injury and impact to the employee is the same, i.e., loss of employment, regardless of whether he or she is unlawfully terminated from employment or constructively discharged. A constructive discharge is usually more drawn out over time and, thereby, subjects the employee to more painful abuse than a direct unlawful termination and yet, in an unfair irony, a contrary holding would leave the employee with no legal remedy for enduring the discriminatory working condition in the optimistic hope that it would stop.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion Regarding Whether Constructive Discharge Constitutes a Tangible Employment Action (document # 80) is **GRANTED** as the Court **FINDS** that a finding by the jury of constructive discharge in this case will be deemed a tangible employment action and will, therefore, preclude the *Ellerth/Faragher* affirmative defense to the Defendant in the trial of this matter.[5]

---

5. The Court expresses its gratitude to Rebecca Ruchalski, a summer extern and second year law student at Arizona State University's College of Law, for her assistance to the Court in the initial preparation and legal research on this matter.